UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARCIN STANISLAW GARBACZ,<br><br>Defendant. | CR. 19-50072-JLV<br><br>AMENDED ORDER |

## INTRODUCTION

A jury convicted defendant Marcin Garbacz of 50 counts of wire fraud, nine counts of money laundering, one count of interstate transportation of stolen money and five counts of making and subscribing a false tax return. (Docket 65). In its second superseding indictment, the government sought forfeiture of property connected to the wire fraud and money laundering offenses under 18 U.S.C. §§ 981(a)(1)(C) & 928(a)(1).[1] (Docket 36 at pp. 18-19). In a hearing outside the presence of the jury, the parties agreed to forego a jury determination of forfeitability and submit the matter to the court. (Docket 61 at p. 4).

The court held a forfeiture hearing on March 12, 2020. (Docket 70). Two witnesses—including defendant—testified at the hearing and the court received 22 exhibits into evidence. (Dockets 70 & 71). For the reasons given below, the

---

[1]The government also requested forfeiture of substitute property under 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c). The court will hold a separate hearing to determine whether the government is entitled to forfeiture of substitute property.

court finds defendant's property is forfeitable and enters a preliminary forfeiture order.

## I.    Legal Standards

### A.    Wire fraud

In a criminal forfeiture proceeding, the court "shall order that [defendant] forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of" a wire fraud offense. 18 U.S.C. § 982(a)(2).   The court uses this standard to evaluate the items' forfeitability as proceeds of wire fraud.

In its second superseding indictment and proposed forfeiture jury instructions, the government relied on standards from the civil forfeiture context.[2]   See Dockets 36 at p. 18 & 54 at pp. 4, 6-7 (citing 18 U.S.C. § 981(a)(1)(C).   The civil forfeiture statute permits the court to forfeit to the government "any property, real or personal, which constitutes or is derived from proceeds traceable to a [wire fraud] violation[.]"   18 U.S.C. § 981(a)(1)(C). Proceeds is defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."   Id. at § 981(a)(2)(A).   The civil statute, unlike its criminal counterpart,

_____

[2]Despite its filings, the government affirmed at the forfeiture hearing that it intended to proceed on criminal forfeiture standards.   The parties stipulated to a court determination of all forfeiture issues without a jury.

includes a traceability element. Property is civilly forfeitable if traceable to a wire fraud offense, but may not be criminally forfeitable.

Congress permits the application of civil forfeiture law in the criminal context in certain situations.

> If a person is charged in a criminal case with a violation of an Act of Congress for which the *civil* or criminal forfeiture of property is authorized . . . . the court shall order the forfeiture of the property as part of the sentence in the criminal case[.]

28 U.S.C. § 2461(c) (emphasis added). The United States Court of Appeals for the Eighth Circuit has applied § 2461(c) to permit criminal forfeiture of mail fraud proceeds in situations authorized only under the civil statute. United States v. Jennings, 487 F.3d 564, 584-85 (8th Cir. 2007). The United States Court of Appeals for the Ninth Circuit has gone so far as to hold generally that "where the government includes a criminal forfeiture allegation pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c), forfeiture is authorized under § 981 even though that section typically governs civil, rather than criminal, forfeiture." United States v. Lo, 839 F.3d 777, 791 (9th Cir. 2016).

Here, however, the civil statute does not authorize forfeiture in a situation unmentioned by its criminal counterpart. Instead, the civil and criminal statutes each authorize forfeiture of wire fraud proceeds under different legal standards. Because the criminal statute permits forfeiture of wire fraud proceeds, the court concludes the gap filling provision of § 2461(c) is inapplicable. Congress chose to set different standards for determining the forfeitability of wire fraud proceeds in the criminal and civil contexts. Applying

3

the civil traceability element in a criminal context would eliminate those differences. "It is a feature of our system of justice that criminal and civil matters are adjudicated in *separate* cases[.]" United States v. Smith, 75 F.3d 382, 385 (8th Cir. 1996) (permitting government to seek criminal and civil forfeiture of same property in separate proceedings) (emphasis added).

In any event, because the court finds the property is forfeitable under the arguably more demanding criminal standard, see infra Section II.B, it is immaterial whether the civil traceability element should apply as well.

### B. Money laundering

The court "shall order that [defendant] forfeit to the United States any property, real or personal, involved in [a money laundering] offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). Property is forfeitable in the money laundering context if it is "involved in" the offense or "traceable to" property involved in the offense.

Property "involved in an offense includes the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." United States v. Hawkey, 148 F.3d 920, 927 (8th Cir. 1998) (internal quotations and alterations omitted). "Facilitation of a laundering offense occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance." Id. at 928 (internal quotations and alterations omitted).

Property traceable to means property where the acquisition is attributable to the money laundering scheme rather than from

4

money obtained from untainted sources. In other words, proof that the proceeds of the money laundering transaction enabled the defendant to acquire the property is sufficient to warrant forfeiture as property "traceable to" the offense. For example, if [defendant] misappropriated $10,000 and used $5,000 of those funds to purchase a motorcycle, the motorcycle is "traceable to" the unlawful monetary transaction and is, therefore, subject to forfeiture.

Id. (internal quotations and citations omitted).

## C.    Third party transfer of property

The Controlled Substances Act ("CSA") vests title in forfeitable property in the United States "upon the commission of the act giving rise to forfeiture[.]"[3] 21 U.S.C. § 853(c). "[Section] 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 627 (1989). Under § 853(c), "title to property . . . passes to the Government at the instant the crime is planned or committed." Luis v. United States, 136 S. Ct. 1083, 1090 (2016).

## II.    Findings of Fact

These factual findings are made on the basis of trial testimony and exhibits, as well as the record made at the forfeiture hearing. All factual findings are made by a preponderance of the evidence. United States v. Beltramea, 785 F.3d 287, 290 (8th Cir. 2015). Although, as noted below, defendant did not oppose forfeiture of the majority of the government's claimed

---

[3]The CSA's forfeiture provisions are generally applicable to all criminal forfeiture proceedings. 28 U.S.C. § 2461(c); United States v. Gregoire, 638 F.3d 962, 971 (8th Cir. 2011) (recognizing same).

items, "a defendant's consent to forfeiture" does not "abrogate[] the requirement that a nexus exist between the property sought for forfeiture and the" offenses of conviction.  Id. at 291.  "The district court ha[s] an independent duty to ensure that the required nexus exists."  Id.  The court therefore makes the factual findings necessary to support forfeiture.

### A. Factual nexus

1. Defendant was ordained a priest in the Roman Catholic Church in 2004. Between 2012 and 2018, defendant worked at parish churches and Catholic schools in Rapid City, South Dakota.

2. Between 2012 and 2017, defendant received a yearly salary between $20,000 and $25,000.  Trial Exs. 61-65.  Priests could receive stipends or non-salary payments for celebrating masses for specific intentions as well as presiding over marriages, baptisms and funerals.  Payments for these services were small, generally under $200 for each service and as low as $10 per mass.  Defendant was eligible for these payments but, because he worked in the Catholic school system, was unable to form the personal relationships with parishioners that would enable him to perform large numbers of these services.  Defendant saw his placement at Catholic schools as an unfair restriction on receiving this supplemental income and complained about it to others.

3. The Church provided defendant with lodging, food and health insurance. He was eligible to receive reimbursements for mileage and his cell phone expenses.

4. Between 2012 and 2018, defendant stole cash from Rapid City parish church collections. Defendant deposited the cash into his personal bank account at Black Hills Federal Credit Union ("BHFCU").

5. Defendant made cash deposits into his BHFCU account totaling $259,475.30 between July 2012 and April 2018. Trial Ex. 67A.

6. Defendant had multiple JP Morgan Chase credit cards. Trial Ex. 93. He often made payments on these credit cards by transfer from his BHFCU account. Trial Ex. 90. Between July 2012 and July 2018, defendant paid $398,837.09 on the credit cards from his BHFCU account.

7. Defendant reported total pretax income of approximately $112,000 on his tax returns for the tax years 2013 – 2017. Trial Exs. 61-65.

8. Between the last half of 2012 and the first half of 2018, defendant had certain recurring expenses, including payments on car and bank loans as well as payments to a retirement account. Forfeiture Ex. T. After subtracting these recurring expenses and reported tax payments from defendant's pretax income as reported to the Internal Revenue Service, defendant had the following amounts available for other spending:

| Table 1: Defendant's legitimate disposable income ||
| Year | Disposable income |
| --- | --- |
| Last half of 2012 | $1,450.06 |
| 2013 | $2,953.12 |
| 2014 | $4,847.22 |
| 2015 | $4,588.22 |
| 2016 | $5,671.84 |
| 2017 | $11,727.88 |
| First half of 2018 | $6,855.44 |

Id.

9.     The disposable income figures in this table do not include any stipends or non-salary payments.   The court does not know how much money defendant received in stipends or other payments.[4]

10.    On April 23, 2018, Linda Stepanek, an employee of the Diocese of Rapid City, notified Father Kerry Prendiville of St. Therese Catholic Church in Rapid City that a surveillance camera recorded a man appearing to steal cash collections from a vault in the church.   Father Prendiville recognized the man on the video as defendant.   Father Prendiville informed Bishop Robert Gruss, who confronted defendant about the theft allegations. Defendant admitted his theft to Bishop Gruss.

---

[4]Trial testimony established that defendant received approximately $68,000 in reimbursements from the Church over the indictment period.   But reimbursements are not income—they compensate for funds already spent. Defendant cannot point to reimbursements as a legitimate source of income.

11. At some point in late 2018 or early 2019, defendant moved to Kent, Washington. He rented an apartment in the Indigo Springs complex.

12. On May 6, 2019, Internal Revenue Service Special Agent Brian Pickens ("SA Pickens") informed defendant he was under federal investigation. SA Pickens stated that his investigation showed defendant stole approximately $200,000 from parish churches in Rapid City.

13. After speaking with defendant, SA Pickens contacted Special Agent Nicholas Saroff ("SA Saroff") of the Department of Homeland Security. SA Pickens asked SA Saroff to check if defendant had a plane ticket to leave the United States. SA Pickens knew defendant's home country is Poland. On the morning of May 10, SA Saroff informed SA Pickens that defendant had a one-way ticket to leave the United States from Seattle-Tacoma International Airport bound for Poland on the afternoon of May 10.

14. Federal Bureau of Investigation agents arrested defendant at Seattle-Tacoma International Airport before he boarded his flight to Poland.

15. Agents seized defendant's luggage upon arrest. They obtained a search warrant and seized the following items from his luggage:

| Table 2: Items seized from defendant's luggage ||
| --- | --- |
| **Item** | **Exhibit Number**[5] |
| Highlander chalice | Trial Ex. 107A1 |
| Vine chalice | Trial Ex. 108A1 |
| 12 Apostles chalice | Trial Ex. 108B1 |
| Polish Cracow Saints chalice | Trial Ex. 108C1 |
| Angels in Cherubim chalice | Trial Ex. 108D1 |
| Cruets set | Trial Ex. 108E1 |
| Mont Blanc mystery fountain pen | Forfeiture Ex. M |
| Mont Blanc starwalker midnight fountain pen | Forfeiture Ex. N |
| Mont Blanc starwalker midnight fountain pen | Forfeiture Ex. O |
| One loose round European cut diamond, weight .70 carat | Forfeiture Ex. V #34 |
| One 9 carat yellow gold ring with religious icon engraving | Forfeiture Ex. V #35 |
| One stainless steel Oris wristwatch, Artelier Skeleton, model #0173476705051 | Forfeiture Ex. V #36 |
| One nickel silver religious brooch with nine silver chain dangles and red fiber accents | Forfeiture Ex. V #37 |
| One men's 14 carat white gold ring with one princess cut diamond, weight .75 carat | Forfeiture Ex. V #38 |
| One loose round full cut diamond, weight 1.06 carat | Forfeiture Ex. V #39 |
| Uruszczak gold plated silver chalice and paten with color cabochon gemstones and pearls | Forfeiture Ex. V #40 |
| Goldtone 2″ x 3″ rectangular icon medallion depicting the Last Supper | Forfeiture Ex. V #42 |
| Six Mont Blanc refills, rollerball and fountain cartridge style | Forfeiture Ex. V #48 |
| Goldtone 2 ¼″ x 3″ rectangular icon medallion depicting Jesus, Mary and Joseph | Forfeiture Ex. V #52 |
| Goldtone 2″ x 3″ rectangular icon medallion depicting Jesus with angels and scribes | Forfeiture Ex. V #53 |

---

[5]Forfeiture Ex. V is similar, but not identical, to the bill of particulars the government filed on February 29, 2020.   (Docket 44-1).

| | |
|---|---|
| Goldtone 2″ round icon medallion depicting baptismal anointing of child | Forfeiture Ex. V #54 |
| Sterling silver five piece collectible icon set in box labeled Skarbiec Mennicy Polskiej | Forfeiture Ex. V #55 |
| Nine bottles of "Le Labo" natural spray | Forfeiture Ex. V #56 |
| Apple model A1706 laptop | Forfeiture Ex. V #57 |
| Apple iPhone | Forfeiture Ex. V #58 |
| Miscellaneous computer equipment: Case Logic case containing cufflinks, adapter and nine USB thumb drives; two Seagate 1 TB hard drives; 4 GB PNY thumb drive; 32 GB PNY thumb drive | Forfeiture Ex. V #59 |

16.  Agents also seized $10,556 in cash from defendant's wallet and luggage. Trial Exs. 80 & 81.

17.  Agents searched defendant's Washington apartment and a storage unit associated with defendant.  The agents seized a headless bronze statue from the storage unit.  Forfeiture Ex. S.  The agents seized the following items from defendant's apartment:

| Table 3: Items seized from defendant's apartment | |
|---|---|
| **Item** | **Exhibit Number** |
| 1.07 carat diamond ring with white gold band | Trial Ex. 110A |
| Hand carved corpus in shape of a crucifix | Forfeiture Ex. Q |
| Baby grand piano | Forfeiture Ex. V #61 |
| Statue of Mary | Forfeiture Ex. V #63 |
| Statue of Joseph | Forfeiture Ex. V #64 |
| Statue of Pope | Forfeiture Ex. V #65 |
| Large wooden crucifix with base | Forfeiture Ex. V #66 |
| Small wooden crucifix with base | Forfeiture Ex. V #67 |
| Wooden crucifix | Forfeiture Ex. V #68 |

| | |
|---|---|
| Wooden crucifix | Forfeiture Ex. V #69 |
| Gold plated book stand | Forfeiture Ex. V #70 |
| Gold plated candle holder/stand/candelabra | Forfeiture Ex. V #71 |
| Three gold plated candle stands | Forfeiture Ex. V #72 |
| Painting of Madonna and child in gold frame | Forfeiture Ex. V #74 |
| Three-dimensional framed artwork of Madonna and Child | Forfeiture Ex. V #75 |
| Incense set (bowl, dispenser and stand) | Forfeiture Ex. V #76 |
| Thumb drive and memory card reader | Forfeiture Ex. V #77 |

18. Agents found in defendant's apartment a note stating he "donate[d] all of these possesion [sic.] to you—the Indigo complex." Trial Ex. 74. The note specifically mentioned the piano, see Forfeiture Ex. V #61, and also noted the religious items could be donated to a local Catholic church. Id.

19. The ring, see Trial Ex. 110A, was found under a bed in defendant's apartment. At the forfeiture hearing, defendant testified he did not intend to leave the ring to the apartment complex.

20. Before his arrest, defendant contacted Joshua VanBuskirk. Mr. VanBuskirk lived in Laramie, Wyoming. Defendant asked Mr. VanBuskirk to come to Washington, retrieve his vehicle, a Toyota Rav4, collect items from a storage unit he rented and take the items back to Laramie. Mr. VanBuskirk left the items in defendant's Rav4 when he returned to Laramie. SA Pickens seized the following items from the Rav4:

| Table 4: Items seized from defendant's Toyota Rav4 | |
|---|---|
| **Item** | **Exhibit Number** |
| Lamb of God monstrance | Trial Ex. 107C1 |
| Monstrance pedestal | Trial Ex. 107D1 |
| Neogothic Stations of the Cross chalice | Forfeiture Ex. E |
| XVI Gothic chalice | Forfeiture Ex. L |
| Altar monstrance | Forfeiture Ex. P |
| Gold colored chalice | Forfeiture Ex. V #1 |
| Gold colored chalice | Forfeiture Ex. V #2 |
| Gold colored religious item | Forfeiture Ex. V #7 |
| Gold colored religious item | Forfeiture Ex. V #8 |
| Gold colored religious item | Forfeiture Ex. V #9 |
| Gold colored religious item | Forfeiture Ex. V #10 |
| Religious book | Forfeiture Ex. V #11 |
| Gold colored chalice and crucifix | Forfeiture Ex. V #12 |
| Gold colored chalice | Forfeiture Ex. V #13 |
| Religious chalice with note indicating "Red Ciborium" | Forfeiture Ex. V #14 |
| Statue | Forfeiture Ex. V #15 |

21.     Defendant shipped numerous items to Mr. VanBuskirk in Laramie.   SA

Pickens seized the following items from boxes defendant sent to Mr.

VanBuskirk's home:

| Table 5: Items seized from Joshua VanBuskirk's home | |
|---|---|
| **Item** | **Exhibit Number** |
| Chroma statue | Trial Ex. 105A1 |
| Juliet statue | Trial Ex. 105B1 |
| Butterfly statue | Trial Ex. 105C1 |

| | |
|---|---|
| Nureyev statue | Trial Ex. 105D1 |
| Elena statue | Trial Ex. 105E1 |
| Joie de Vivre statue | Trial Ex. 105F1 |
| Dance the Dream statue | Trial Ex. 105G1 |
| Leap of Faith statue | Trial Ex. 105H1 |
| Blind Faith statue | Trial Ex. 105I1 |
| Gymnast statue | Trial Ex. 105J1 |
| Animals at Bethlehem figures | Forfeiture Ex. F |
| Mother figure | Forfeiture Ex. G |
| Essence of Life figure | Forfeiture Ex. H |
| Camel figure | Forfeiture Ex. I |
| Wisemen figures | Forfeiture Ex. J |
| Mary and Joseph figures | Forfeiture Ex. K |
| Angel Protector figure | Forfeiture Ex. V #26 |

22.  SA Pickens testified at the forfeiture hearing that, based on his
investigation, defendant could not have purchased the items listed in the
above table solely using his legitimate income.   SA Pickens testified the
items were purchased, at least in part, with the proceeds of defendant's
thefts from the parish churches in Rapid City.

23.  At the forfeiture hearing, defendant stipulated to forfeiture of most of the
items.   He contested forfeiture of only two items: the Chroma and Nureyev
statues seized from Mr. VanBuskirk's home.   Trial Exs. 105A1 & 105D1.
Defendant testified he purchased both items with funds accumulated
through mass stipends, Christmas gifts, gifts from family members, and
picking up extra work around the diocese.   Defendant testified he received

14

cash gifts from family members in United States dollars during annual trips to Poland.

24. Defendant purchased Chroma on February 15, 2018 for $14,000. Trial Ex. 105A2. On the same day, he paid $10,000 from his BHFCU account to a JP Morgan Chase credit card.[6] Trial Ex. 90. On February 26, he made a $6,000 payment. Id.

25. Defendant purchased Nureyev on August 2, 2016, for $12,500. Trial Ex. 105D2. On August 5, he paid $12,692.17 from his BHFCU account to a JP Morgan Chase credit card.[7] Trial Ex. 90.

26. Defendant testified all the items circled on Exhibit V—the government's bill of particulars, altered and offered into evidence by the defense—were purchased at least in part with proceeds of the offenses of conviction. Defendant also testified he purchased each of the circled items after July 3, 2012, the date of the first wire fraud offense of which the jury convicted defendant. The circled items are all included in the above tables.

---

[6]The government offered into evidence 2018 credit card statements for only one JP Morgan Chase credit card. Trial Ex. 93A. The $14,000 payment does not appear in those statements. The Chroma sales receipt indicates defendant paid for it using a Visa card. Trial Ex. 105A2. The court does not have a record showing which account defendant used to pay for the statue.

[7]As with the Chroma statue, the record does not reveal what account defendant used to purchase Nureyev or to which account defendant made the August 5 payment.

**B.    Forfeiture findings**

27.    The jury's guilty verdict on the 50 charges of wire fraud alleged in the
second superseding indictment indicates the jury concluded the cash
defendant deposited in his BHFCU account was stolen from the parish
churches of Rapid City.   The court therefore finds the money in
defendant's BHFCU account during the indictment period in excess of
defendant's legitimate salary was the proceeds of wire fraud.

28.    The court finds defendant spent large parts of his legitimate salary on
taxes and certain recurring expenses.   Forfeiture Ex. T.   The court finds
defendant's legitimate disposable income for the years of the indictment
period was as stated above in Table 1.

29.    The court finds defendant could not have purchased any of the items the
government alleges are subject to forfeiture in full with his legitimate
disposable income.

30.    The court finds the $10,556 agents seized from defendant at
Seattle-Tacoma International Airport is proceeds of wire fraud and money
laundering.

31.    The court finds defendant purchased the items the government alleges are
subject to forfeiture with the proceeds of his wire fraud offenses; that is,
with money in his BHFCU account derived from his theft of cash donations
to parish churches in Rapid City.

32. The court finds defendant's testimony he purchased the Chroma and Nureyev statues with money he earned through mass stipends and other legitimate work is not credible. Trial testimony established non-salary stipends and other forms of income available to priests could not amount to the thousands of dollars needed to purchase the statues.

33. The court finds defendant's testimony he purchased the Chroma and Nureyev statues with money gifted to him by family members is not credible. Trial testimony established defendant's family in Poland was not wealthy and the government was unable to identify any wire transfers from Poland to defendant. The court further finds it incredible that defendant's family gave him thousands of United States dollars in cash in Poland that he then used to purchase the statues.

34. The court finds defendant used the proceeds of his wire fraud offenses to purchase the Chroma and Nureyev statues.

35. Pursuant to 21 U.S.C. § 853(c), the court finds defendant did not have valid title to the items he purchased with wire fraud proceeds but later left in his apartment or purported to transfer to the Indigo Springs apartment complex. The court finds title to those items transferred to the government upon their purchase by defendant, as they were purchased with illicit money. This finding applies to the items listed in Table 3.

36.     The court finds each of the items the government alleges is subject to

        forfeiture is in fact subject to forfeiture as the proceeds of the wire fraud or

        money laundering offenses for which defendant was convicted.

**III.    Preliminary Order of Forfeiture**

        Based on the above factual findings and Federal Rule of Criminal

Procedure 32.2(b)(2), it is

        ORDERED as follows:

1.      Defendant shall forfeit to the United States his interest in the below

        described property:

| Item | Exhibit Number |
|------|----------------|
| $10,556 in cash | Trial Exs. 80 & 81 |
| Chroma statue | Trial Ex. 105A1 |
| Juliet statue | Trial Ex. 105B1 |
| Butterfly statue | Trial Ex. 105C1 |
| Nureyev statue | Trial Ex. 105D1 |
| Elena statue | Trial Ex. 105E1 |
| Joie de Vivre statue | Trial Ex. 105F1 |
| Dance the Dream statue | Trial Ex. 105G1 |
| Leap of Faith statue | Trial Ex. 105H1 |
| Blind Faith statue | Trial Ex. 105I1 |
| Gymnast statue | Trial Ex. 105J1 |
| Highlander chalice | Trial Ex. 107A1 |
| Lamb of God monstrance | Trial Ex. 107C1 |
| Monstrance pedestal | Trial Ex. 107D1 |
| Vine chalice | Trial Ex. 108A1 |

| | |
|---|---|
| 12 Apostles chalice | Trial Ex. 108B1 |
| Polish Cracow Saints chalice | Trial Ex. 108C1 |
| Angels in Cherubim chalice | Trial Ex. 108D1 |
| Cruets set | Trial Ex. 108E1 |
| 1.07 carat diamond ring with white gold band | Trial Ex. 110A |
| Neogothic Stations of the Cross chalice | Forfeiture Ex. E |
| Animals at Bethlehem figures | Forfeiture Ex. F |
| Mother figure | Forfeiture Ex. G |
| Essence of Life figure | Forfeiture Ex. H |
| Camel figure | Forfeiture Ex. I |
| Wisemen figures | Forfeiture Ex. J |
| Mary and Joseph figures | Forfeiture Ex. K |
| XVI Gothic chalice | Forfeiture Ex. L |
| Mont Blanc mystery fountain pen | Forfeiture Ex. M |
| Mont Blanc starwalker midnight fountain pen | Forfeiture Ex. N |
| Mont Blanc starwalker midnight fountain pen | Forfeiture Ex. O |
| Altar monstrance | Forfeiture Ex. P |
| Gold colored chalice | Forfeiture Ex. V #1 |
| Gold colored chalice | Forfeiture Ex. V #2 |
| Gold colored religious item | Forfeiture Ex. V #7 |
| Gold colored religious item | Forfeiture Ex. V #8 |
| Gold colored religious item | Forfeiture Ex. V #9 |
| Gold colored religious item | Forfeiture Ex. V #10 |
| Religious book | Forfeiture Ex. V #11 |
| Gold colored chalice and crucifix | Forfeiture Ex. V #12 |
| Gold colored chalice | Forfeiture Ex. V #13 |
| Religious chalice with note indicating "Red Ciborium" | Forfeiture Ex. V #14 |

| Statute | Forfeiture Ex. V #15 |
|---|---|
| Angel Protector figure | Forfeiture Ex. V #26 |
| One loose round European cut diamond, weight .70 carat | Forfeiture Ex. V #34 |
| One 9 carat yellow gold ring with religious icon engraving | Forfeiture Ex. V #35 |
| One stainless steel Oris wristwatch, Artelier Skeleton, model #0173476705051 | Forfeiture Ex. V #36 |
| One nickel silver religious brooch with nine silver chain dangles and red fiber accents | Forfeiture Ex. V #37 |
| One men's 14 carat white gold ring with one princess cut diamond, weight .75 carat | Forfeiture Ex. V #38 |
| One loose round full cut diamond, weight 1.06 carat | Forfeiture Ex. V #39 |
| Uruszczak gold plated silver chalice and paten with color cabochon gemstones and pearls | Forfeiture Ex. V #40 |
| Goldtone 2" x 3" rectangular icon medallion depicting the Last Supper | Forfeiture Ex. V #42 |
| Six Mont Blanc refills, rollerball and fountain cartridge style | Forfeiture Ex. V #48 |
| Goldtone 2 ¼" x 3" rectangular icon medallion depicting Jesus, Mary and Joseph | Forfeiture Ex. V #52 |
| Goldtone 2" x 3" rectangular icon medallion depicting Jesus with angels and scribes | Forfeiture Ex. V #53 |
| Goldtone 2" round icon medallion depicting baptismal anointing of child | Forfeiture Ex. V #54 |
| Sterling silver five piece collectible icon set in box labeled Skarbiec Mennicy Polskiej | Forfeiture Ex. V #55 |
| Nine bottles of "Le Labo" natural spray | Forfeiture Ex. V #56 |
| Apple model A1706 laptop | Forfeiture Ex. V #57 |
| Apple iPhone | Forfeiture Ex. V #58 |
| Miscellaneous computer equipment: Case Logic case containing cufflinks, adapter and nine USB thumb drives; two Seagate 1 TB hard drives; 4 GB PNY thumb drive; 32 GB PNY thumb drive | Forfeiture Ex. V #59 |
| Baby grand piano | Forfeiture Ex. V #61 |
| Statue of Mary | Forfeiture Ex. V #63 |
| Statue of Joseph | Forfeiture Ex. V #64 |

| | |
|---|---|
| Statue of Pope | Forfeiture Ex. V #65 |
| Large wooden crucifix with base | Forfeiture Ex. V #66 |
| Small wooden crucifix with base | Forfeiture Ex. V #67 |
| Wooden crucifix | Forfeiture Ex. V #68 |
| Wooden crucifix | Forfeiture Ex. V #69 |
| Gold plated book stand | Forfeiture Ex. V #70 |
| Gold plated candle holder/stand/candelabra | Forfeiture Ex. V #71 |
| Three gold plated candle stands | Forfeiture Ex. V #72 |
| Painting of Madonna and child in gold frame | Forfeiture Ex. V #74 |
| Three-dimensional framed artwork of Madonna and Child | Forfeiture Ex. V #75 |
| Incense set (bowl, dispenser and stand) | Forfeiture Ex. V #76 |
| Thumb drive and memory card reader | Forfeiture Ex. V #77 |

2. Upon the entry of this order, the United States is authorized to seize the above described property for forfeiture, whether held by defendant or by a third party, and to conduct any discovery proper in identifying, locating or disposing of the property subject to forfeiture in accordance with Federal Rule of Criminal Procedure 32.2(b)(3).

3. Upon the entry of this order and pursuant to Federal Rule of Criminal Procedure 32.3(b)(6) and Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty and Maritime cases, the United States shall post to www.forfeiture.gov, for a period of thirty (30) consecutive days, notice of this order, notice of the United States' intent to dispose of the property according to law and notice that any person other than defendant, having or claiming a legal interest in any of the above-listed forfeited property,

must file a petition with this court within thirty (30) days of the final publication of notice or receipt of actual notice, whichever is earlier.

4.  The notice shall state a claimant's petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property, shall be signed by the petitioner under penalty of perjury and shall set for the nature and extent of the petitioner's right, title or interest in the forfeited property, any additional facts supporting the petitioner's claim and the relief sought.

5.  The United States must also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property identified above as a substitute for published notice as to those persons so notified.   The United States, to the extent practicable, must provide notice of this preliminary order of forfeiture to the Indigo Springs apartment complex and to sculptor Dale Claude Lamphere.

6.  Upon adjudication of all third-party interests, the court will enter a final order of forfeiture.

Dated March 25, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE