UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARCIN STANISLAW GARBACZ,<br><br>Defendant. | CR. 19-50072-JLV<br><br>ORDER |

A jury convicted defendant Marcin Garbacz of 50 counts of wire fraud, nine counts of money laundering, one count of interstate transportation of stolen money and five counts of making and subscribing a false tax return. (Docket 65). The court entered a sentencing scheduling order. (Docket 72). Pursuant to the order, the court held a restitution hearing on November 13, 2020. Id. at p. 3.

**LEGAL STANDARD**

Restitution is required under 18 U.S.C. §§ 3663A & 3664(j)(1) and United States v. Schmidt, 675 F.3d 1164 (8th Cir. 2012). The Mandatory Victims Restitution Act ("MVRA") provides:

> (a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . .
>
> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the

>     commission of an offense for which restitution may be ordered
>     including, in the case of an offense that involves as an element
>     a scheme . . . or pattern of criminal activity, any person
>     directly harmed by the defendant's criminal conduct in the
>     course of the scheme . . . or pattern. . . .
>
> (c)(1) This section shall apply in all sentencing proceedings for
>     convictions of . . . any offense . . .
>
>     (B)    in which an identifiable victim or victims has
>            suffered a . . . pecuniary loss.

18 U.S.C. § 3663A(a)(1)-(3) & (c)(1)(B).

"Restitution is designed to make victims whole, not to punish perpetrators[.]" United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005); see also United States v. Balentine, 569 F.3d 801, 806 (8th Cir. 2009) ("The intended beneficiaries of the MVRA's procedural mechanisms are the victims, not the victimizers.") (internal quotation marks and citation omitted). "[N]either [Apprendi v. New Jersey, 530 U.S. 466 (2000),] nor [Blakely v. Washington, 542 U.S. 296 (2004),] prohibit judicial fact finding for restitution orders." Carruth, 418 F.3d at 904. Furthermore, United States v. Booker, 543 U.S. 220 (2005), "does not affect restitution orders since they are not subject to any prescribed statutory maximum and they are not in the nature of a criminal penalty." Carruth, 418 F.3d at 904.

The MVRA is intended "to ensure that victims of a crime receive full restitution." Dolan v. United States, 560 U.S. 605, 612 (2010); United States v. Statman, 604 F.3d 529, 538 (8th Cir. 2010). "The MVRA requires restitution 'in the full amount of each victim's losses . . . without consideration of the economic

2

circumstances of the defendant.'" United States v. Senty-Haugen, 449 F.3d 862, 865 (8th Cir. 2006) (citing 18 U.S.C. § 3664(f)(1)(A)).

The government bears the burden to prove the victims' losses by a preponderance of the evidence. 18 U.S.C. § 3664(e). "[T]he government may meet its burden of proof by introducing testimony from the investigating [agent] . . . or a sworn statement from the victim outlining the losses sustained as a result of the crime." United States v. Adetiloye, 716 F.3d 1030, 1039 (8th Cir. 2013) (internal citation omitted). "Although the government bears the burden of proving the restitution amount by a preponderance of the evidence, . . . 'a district court is charged only with reasonably estimating the loss' when the amount lost through fraud is difficult to estimate[.]" United States v. Adejumo, 848 F.3d 868, 870–71 (8th Cir. 2017) (citing Adetiloye, 716 F.3d at 1039; United States v. Alexander, 679 F.3d 721, 729 (8th Cir. 2012); additional citation omitted). "While the Federal Rules of Evidence do not apply at sentencing, 'information considered by the sentencing court must have sufficient indicia of reliability to support [its] probable accuracy.'" Id. (citing United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005); additional citation omitted).

"[T]he IRS is an eligible victim under the MVRA." Senty-Haugen, 449 F.3d at 865. "[I]n any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution." Id. (citing 18 U.S.C. § 3664(i)).

Once the court sets the amount of restitution, it must fashion a schedule of restitution payments considering:

> [T]he financial resources and other assets of the defendant . . . ;
>
> projected earnings and other income of the defendant; and
>
> any financial obligations of the defendant . . . .

18 U.S.C. §§ 3664(f)(2)(A)-(C). In establishing a schedule for payment of restitution, the court

> may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

Id. § 3664(f)(3)(B).

**ANALYSIS**

Internal Revenue Service ("IRS") Special Agent ("SA") Brian Pickens testified at the restitution hearing. As part of the criminal investigation of Mr. Garbacz, SA Pickens evaluated the defendant's personal checking account at the Black Hills Federal Credit Union. The agent developed a detailed accounting of cash deposits to the defendant's account for the period July 2012 through April 2018. See Trial Exhibit 91.

During this period, Mr. Garbacz deposited $259,696.19 in cash into his checking account. SA Pickens' accounting does not include electronic deposits of $20,000 to $24,000, per year, for defendant's annual salary as a Roman Catholic priest, checks or income derived from the sale of any items of personal

4

property on the internet. For the same period, SA Pickens prepared a summary of cash deposits by denomination. See Trial Exhibit 67. This detailed table was summarized in Trial Exhibit 67A. As noted, the "summary [$161,044] does not include $98,431.30 of cash deposits into [defendant's] account made through the ATM, since Black Hills [Federal Credit Union] did not keep records of denominations of cash deposited through the ATM." Id. SA Pickens explained adding the two figures of Trial Exhibit 67A, plus $220.89 in coins deposited to defendant's account over the period under investigation, results in the same figure, $259,696.19, developed by the agent in Trial Exhibit 91.

Once Mr. Garbacz was caught red-handed by a hidden video camera on April 23, 2018, stealing money from a parish's locked money bag, the defendant withdrew $40,000 from his checking account. From that point forward, SA Pickens noted the defendant did not make any further cash deposits to his checking account and the three parishes' cash collections increased, returning to pre-investigation levels.

SA Pickens testified in his professional opinion that over the course of the seven and one-half years included in the investigation the three parishes St. Therese The Little Flower, Cathedral of Our Lady of Perpetual Help and Blessed Sacrament were the victims of the defendant's criminal conduct. In his opinion the victims suffered a total loss of $259,696.19.

During cross-examination, SA Pickens was asked if he investigated to determine if other individuals may have been stealing money from the three

5

parishes. SA Pickens testified he did investigate other individuals who may have had access to the parishes' money but could not find another individual who developed as a suspect. Mr. Garbacz's conduct, admissions to law enforcement and the cash activities in his Black Hills Federal Credit Union account identified the defendant as the thief.

SA Pickens acknowledged he did not deduct cash stipends which may have been received by Mr. Garbacz for conducting weddings, funerals and other special church ceremonies. From his discussion with other priests of the three parishes, SA Pickens estimated the defendant's total cash stipends during the period under investigation would have ranged in total from $500 to $1,000. The defendant did not challenge these figures or present any evidence of a larger amount received in stipends.

SA Pickens investigated the defendant's reported income and income tax paid as well as the defendant's unreported income and income tax not paid on the unreported income in each year. See Trial Exhibits 61-65 and 61A-65A. For the tax return years 2013 through 2017, the defendant had unreported income totaling $235,818 and income tax due totaling $46,008. See Restitution Exhibit 111. The agent testified the difference between the total unreported income and the total amount of the victims' losses occurs because part of the losses occurred in 2012 and 2018, years during which defendant's tax returns were not under investigation.

6

The court finds SA Pickens' testimony credible. As a certified public accountant and special agent for the IRS for nine years, he has the education, background and expertise to conduct the in-depth investigation which occurred in this case. SA Pickens' professional work qualified him to develop the charts and summaries used to identify and illustrate the activities in defendant's accounts and to arrive at the financial conclusions as to the losses suffered by the parish victims and the IRS.

The court finds by a preponderance of the evidence that the government satisfied its burden of proof to arrive at restitution in this case. 18 U.S.C. § 3664(e). While the government, the parishes and the court may never know the full extent of defendant's criminal conduct, the court is satisfied the losses suffered by the parishes and the IRS are reasonably calculated. See Adejumo, 848 F.3d at 870–71.

| | |
|---|---|
| Based on the figures discussed above, the court calculates the following: | |
| Total cash deposits to defendant's account | $259,696.19 |
| Less cash stipends received | -  1,000.00 |
| Total restitution due to victims | $<u>258,696.19</u> |

The victims agree restitution should be equally divided among the three parishes. See Docket 87 at p. 1 ("Together, as pastors of these three parishes, we have concluded that any restitution ordered by the court, to be paid to our parishes, as victims of these crimes, should be split equally between the three parishes: each parish receiving 1/3 of any restitution distributions.").

7

## ORDER

Based on the above analysis, it is

ORDERED that total restitution of $258,696.19, due to the parishes which were the victims of defendant's criminal conduct, shall be allocated as follows:

| | |
|---|---|
| St. Therese The Little Flower | $86,232.07 |
| Cathedral of Our Lady of Perpetual Help | $86,232.06 |
| Blessed Sacrament | $86,232.06 |

IT IS FURTHER ORDERED that the United States Treasury Department, Internal Revenue Service, is entitled to restitution of $46,008 for unpaid federal income taxes for the tax years 2013 through 2017.

IT IS FURTHER ORDERED pursuant to 18 U.S.C. § 3664(i) that the three parish victims shall receive full restitution before the United States receives any restitution.

IT IS FURTHER ORDERED that at sentencing on Monday, November 23, 2020, at 9:30 a.m., the court will fashion a schedule of restitution payments to be made by the defendant.

Dated November 19, 2020.

BY THE COURT:

/s/ Jeffrey L. Viken
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE